1
2
3
4
5
6
7
8        UNITED STATES  DISTRICT COURT

9        Northern District of California

10       San Francisco Division

11  ANGELIQUE M AYLSWORTH,                      No. C 13-02286 LB

12              Plaintiff,                      **ORDER GRANTING DEFENDANTS'
                                                MOTIONS TO DISMISS**
         v.
13
    WELLS FARGO BANK, et al.,                   [ECF Nos. 36 & 40]
14
                Defendants.
15  _____/

16                              **INTRODUCTION**

17       Plaintiff Angelique M. Aylsworth sued Wells Fargo Bank, N.A., Citibank, N.A., Private

18  Mortgage Advisors, LLC, and First American Trustee Servicing Solutions, LLC (collectively,

19  "Defendants") for alleged misconduct related to the origination and servicing of her adjustable-rate

20  mortgage loan and the foreclosure proceedings on her property.  *See* First Amended Complaint

21  ("FAC"), ECF No. 17.[1]  Defendants move to dismiss.[2]  *See* ECF Nos. 36, 40.  Upon consideration of

22  the papers submitted and applicable legal authorities, the court **GRANTS** the motions to dismiss.[3]

23  _____

24       [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
    generated page number at the top of the document.
25
         [2]  The court collectively refers to Wells Fargo, Citibank, and Private Mortgage Advisors as
26  "Lenders."

27       [3]  Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination
28  without oral argument and vacates the May 24, 2012 hearing.

Ms. Aylsworth owns a residence at 664 Myrtle Avenue, South San Francisco, California (the "Property"). First Amended Complaint ("FAC"), ECF No. 17.

## I. LOAN ORIGINATION

In or about February 2007, Ms. Aylsworth contacted an "Agent" to apply for a mortgage loan.[5] See *Id.* ¶¶ 22-23. She told the Agent that she wanted the "best possible loan and rate." *Id.* ¶ 22. The Agent, rather than Ms. Aylsworth, filled out the loan application over the phone. Ms. Aylsworth was not given the opportunity to read the loan documents before signing. *Id.*

During signing, Ms. Aylsworth reviewed the loan documents and noticed that the terms of the loan had changed "in that it was an interest only loan." *Id.* No details were provided to Ms.

---

[4] The facts below are taken from the FAC, its exhibits, and the documents subject to judicial notice. The Lenders ask the court to take judicial notice of the following documents: (1) a Deed of Trust, dated February 16, 2007, recorded in the Official Records of the San Mateo County Recorder's Office as document number 2007-030075 on February 27, 2007; (2) a Substitution of Trustee dated September 11, 2009 and recorded in the Official Records of the San Mateo County Recorder's Office as document number 2009-128306 on September 25, 2009; (3) a Notice of Default and Election to Sell Under Deed of Trust, dated November 11, 2010 and recorded in the Official Records of the San Mateo County Recorder's Office as document number 2010-136737 on November 15, 2010; (4) a Notice of Trustee's Sale, dated March 3, 2011 and recorded in the Official Records of the San Mateo County Recorder's Office as document number 2011-027529 on March 8, 2011; and (5) a Notice of Trustee's Sale dated March 5, 2012, and recorded in the Official Records of the San Mateo County Recorder's Office as document number 2012-031819 on March 8, 2012. *See* Lender's Request for Judicial Notice ("RJN"), ECF No. 41.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the documents listed above are public records, the court may take judicial notice of the undisputed facts contained in them. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). Ms. Aylsworth has not objected to the court's consideration of these documents and has not challenged any of the facts in them. Accordingly, the court takes judicial notice of Exhibits B through E (numbered 2-5 above). Because the Deed of Trust is attached to Ms. Aylsworth's Complaint, the court does not need declines to take judicial notice of the copy attached as Exhibt A to the RJN.

[5] The FAC does not name the Agent or otherwise identify whether the Agent was affiliated with any Defendant.

1   Aylsworth.  *Id.*  The Agent told Ms. Aylsworth that she could always refinance the loan later and

2   directed her to sign the loan documents in a short period of time.  The FAC also alleges that "Agent

3   did not disclose and Plaintiff was not aware that, among other things, the first ten(10) years of the

4   loan was interest only and the loan contained a late charge of 5% of the principal and interest due.

5   *Id.* ¶ 23.

6       Ms. Aylsworth felt pressured and that she had no choice but to sign the loan documents.  *Id.* ¶

7   22.  She signed them in a public place in the presence of a notary.  *Id.*  Copies of the loan documents

8   were not provided to Ms. Aylsworth until after the loan was signed and recorded.  *Id.*

9       Ms. Aylsworth's loan is an adjustable-rate montage loan in the amount of $568,000.  *See* FAC

10  ¶ 26, Ex. D.  The loan is secured by a Deed of Trust on the Property that was executed on or about

11  February 16, 2007.[6]  *See* FAC Ex. D., ECF No. 17 at 44.  The Deed names Private Mortgage

12  Advisors, LLC ("PMA") as the Lender and Fidelity National Title Ins Co as the Trustee.  *See id.* at

13  44-45.  On February 16, 2007, PMA assigned the Deed to Wells Fargo.  *See* FAC Ex. A, ECF No.

14  17 at 35.  On February 27, 2008, at PMA's request, the Deed and the Assignment to Wells Fargo

15  were recorded in the official records of San Mateo County.  *Id.* at 35, 44.

16  **II. LOAN MODIFICATION**

17      In mid-2009, Ms. Aylsworth began contacting "Lender" (an entity that the complaint does not

18  specifically identify) to ask about obtaining a loan modification.  *Id.* ¶ 24.  She submitted a loan

19  modification application and all the required documentation.  *Id.* ¶ 47.

20      On August 24, 2009, Wells Fargo, through First American, "its alleged trustee," recorded a

21  Notice of Default on the Property (the "2009 NOD").  *Id.* ¶¶ 26, 62, 73.  The 2009 NOD was signed

22  by Wendy Randall.  *Id.* ¶ 63.  "Wendy Randall" is a "notorious robo-signature[]" that has "been seen

23  all over the Country."  *Id.* ¶¶ 63, 81, 87.  Wendy Randall and the other robo-signatures below are the

24  names of "persons paid to sign documents for pecuniary gain, not based on actual knowledge of the

25  ────────────────

26      [6]  The record does not indicate the date Ms. Aylsworth signed the Deed of Trust.  The
    document states that it is dated February 16, 2007.  *See* FAC Ex. D, ECF No. 17 at 44.  The
27  signature pages, however, are undated.  *See id.* at 58, 64.  The Deed was notarized on February 20,
    2007.  It was recorded on February 27, 2007.
28

1   contents of the facts contained in the documents they are attesting to. *Id.* ¶ 87.

2      On September 11, 2009, "Herman John Kennerty, Vice President of Loan Documentation" for

3   "Wells Fargo Bank, NA as it [*sic*] attorney in fact for EMC MORTGAGE CORPORATION" signed

4   a Substitution of Trustee naming First American as Trustee under the Deed of Trust in place of the

5   former Trustee, Fidelity National Title Ins Co. *See* FAC ¶ 64; RJN Ex. B. Herman John Kennerty

6   also is a robo-signature. FAC ¶¶ 64, 81, 87. The Substitution of Trustee was recorded in the

7   Official Records of San Mateo County on September 25, 2009. *Id.*; RJN Ex. B.

8      On October 2, 2009, Wells Fargo signed an assignment transferring its interest in the Deed of

9   Trust to EMC Mortgage Corporation. Complaint Ex. B, ECF No. 17 at 39. A stamp on the front of

10  the assignment has the words "Effective Date" with "9/8/09" handwritten below. *Id.* The

11  assignment was recorded on October 13, 2009. *Id.*

12     In "late 2009," a Wells Fargo representative spoke with Ms. Aylsworth on the telephone and told

13  her that she had been approved for a temporary loan modification. *Id.* ¶ 48. The Wells Fargo

14  representative also said that if Ms. Aylsworth made three consecutive and timely payments in the

15  amount of $1,950.17, she would be given a permanent loan modification and that Ms. Aylsworth

16  would receive paperwork in the mail to reflect the trial loan modification payment plan. *Id.* ¶¶ 48,

17  115. Ms. Aylsworth was also asked to provide banking information so that the monthly payments

18  could automatically be withdrawn from her checking account and she provided the necessary

19  banking information. *Id.*

20     In October, November, and December 2009, Ms. Aylsworth made the timely payments required

21  under the trial modification. *Id.* ¶ 48, Ex. E. During that three month period, however, Wells Fargo

22  failed to send Ms. Aylsworth anything in writing to reflect the verbal agreement even though it

23  withdrew the three monthly payments from Ms. Aylsworth's checking account. *Id.* ¶¶ 48, 115.

24     At the end of the three-month trial modification, Ms. Aylsworth contacted Wells Fargo to ask

25  about her permanent loan modification. *Id.* ¶¶ 49, 116. A Well Fargo representative told her that

26  they were going to mail her a permanent loan modification package. *Id.* Ms. Aylsworth repeatedly

27  contacted Wells Fargo and was told to keep checking the mail and that the application package had

28  been sent. *Id.* Ms. Aylsworth never received a permanent loan modification package. *Id.*

1   Ms. Aylsworth applied for a loan modification approximately five more times, but was always

2   denied. *Id.* ¶¶ 24, 50, 117. Each time she applied, Wells Fargo sent her numerous letters stating she

3   had not provided necessary documentation. *Id.* ¶¶ 24, 50, 117. Ms. Aylsworth would resubmit the

4   document she previously sent and go through a lengthy application process. *Id.* ¶¶ 50, 117. Each

5   time, Wells Fargo eventually denied her request because of the allegedly missing documentation.

6   *Id.*

7   Ms. Aylsworth complied with every request from Defendants in her unsuccessful attempts to

8   obtain a loan modification or assistance. *Id.* ¶¶ 51, 119.

9   **III. DEFENDANTS' NOTICE OF DEFAULT AND ATTEMPTED FORECLOSURE**

10   On October 28, 2010, Wells Fargo rescinded the 2009 NOD. FAC ¶¶ 62, 73. It recorded

11   another Notice of Default (the "2010 NOD") on November 15, 2010. *Id.* ¶¶ 63, 73; RJN Ex. C. The

12   2010 NOD states that as of November 11, 2010, the past due amount on Ms. Aylsworth's mortgage

13   was $79,884.75. FAC ¶ 104; RJN Ex. C. Ms. Aylsworth alleges that this amount is incorrect. FAC

14   ¶ 104.

15   The 2010 NOD was signed by Olga Volpe and the attached Notice of Default Declaration was

16   signed by Nicole Miles-Todd. FAC ¶ 63; *see* RJN Ex. C. Olga Volpe and Nicole Miles-Todd also

17   are robo-signatures "that have been seen all over the Country." *Id.* ¶¶ 63, 81, 87. The Notice of

18   Default Declaration states that Wells Fargo Home Mortgage met the requirements of California

19   Civil Code § 2923.5, by meeting one of the following five requirements:

20   • The Beneficiary has made contact with the borrower pursuant to CA Civil Code
        2923(a)(2). Contact with the borrower was made in person or by telephone to assess the
21      borrower's financial situation and explore options for the borrower to avoid disclosure.

22   • Due Diligence to contact the borrower was exercised pursuant to CA Civil Code
        2923.5(g)(2) by the Beneficiary.
23

24   • The borrower has surrendered the property as evidenced by either a letter confirming the
        surrender or delivery of the keys to the property to the mortgage. Trustee, beneficiary, or
        authorized agent pursuant to CA Civil Code 2923.5(h)(1).
25

26   • The borrower has contracted with an organization, person, or entity whose primary
        business is advising people who have decided to leave their homes on how to extend the
27      foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries
        pursuant to CA Civil Code 2923.5(h)(2).

28   • The borrower has filed for bankruptcy and the proceedings have not been finalized

pursuant to CA Civil Code 2923.5(h)(3). *See* RJN Ex. C.

Before recording the 2010 NOD, Defendants did not do any of the following: (1) contact Ms. Aylsworth; (2) send her a first class letter that included a toll-free number for HUD; (3) send her a certified letter with return receipt requested after she did not respond to Defendants after two weeks; (4) enter into good faith discussions with her; or (5) attempt to contact her by telephone at least three times, at three hours, and on different days. *Id.* ¶¶ 66, 74-77. Ms. Aylsworth's mailing address and primary telephone number have not changed since the date of her loan to the present. *Id.* ¶ 74. Her primary telephone number allows for voice messages, and she does not recall ever receiving telephone messages from Wells Fargo prior to the 2010 NOD being recorded. *Id.* ¶ 76.

On March 3, 2011, First American signed a Notice of Trustee's Sale, which it recorded on March 8, 2011. *See* FAC ¶¶ 25, 62; RJN Ex. D. The 2011 Notice of Trustee's sale was robo-signed by Wendy Randall. *See* FAC ¶¶ 63, 81, 87; RJN Ex. D. On March 5, 2012 Wendy Randall signed another Notice of Trustee's Sale, which First American recorded on March 8, 2012. FAC ¶¶ 25, 62; *see* RJN Ex. E.

On January 16, 2013, Ms. Aylsworth sent Wells Fargo a qualified written request ("QWR") and sent Wells Fargo and First American a validation of debt ("VOD"). *Id.* ¶ 97. The QWR stated that Ms. Aylsworth believed there had been RESPA or TILA violations in the way certain fees associated with her loan and loan documentation were processed. *Id.* It also requested a specific breakdown of the fees and an explanation for the charges. *Id.* Neither Wells Fargo nor First American have responded. *Id.* ¶ 98. Ms. Aylsworth alleges on information and belief that Defendants reported her debt to a consumer reporting agency within 60 days after receiving her QWR and VOD. *Id.* ¶ 101.

On or about January 17, 2013, Ms. Aylsworth appealed the denial of her loan modification application. FAC ¶ 92. The appeal was denied on February 15, 2013. *Id.* The denial letter stated, "[p]lease note that within 15 days of the date of this letter, your home will not be sold in a foreclosure sales." *Id.* ¶ 92. Despite those assurances, a foreclosure sale had been scheduled for February 27, 2013 – just 12 days later. *Id.* This was brought to Wells Fargo's attention, but it failed

to take any action to postpone the trustee sale. *Id.*

Just prior to the sale, on February 27, 2013, Ms. Aylsworth filed for bankruptcy with a certification setting forth exigent circumstances. *Id.* ¶ 93. The trustee was notified immediately and did not move forward with the trustee sale. *Id.*

## IV. PROCEDURAL HISTORY

Ms. Aylsworth filed the instant civil action on April 10, 2013 in San Mateo County Superior Court. Notice of Removal Ex. A, ECF No. 1. Wells Fargo was served with the Summons on April 18, 2013. *See id.*, ECF No. 1 at 8. The record does not indicate when the other Defendants were served, though none of them dispute that service was proper. None of the Defendants answered the Complaint. Instead, on May 20, 2013, the Lenders removed the action to this court on federal question grounds. *Id.* at 2. First American joined the Notice of Removal the same day. *See* Joinder in Notice of Removal, ECF No. 4.

On May 22, 2013, First American moved to dismiss Ms. Aylsworth's Complaint. ECF No. 8. The Lenders moved to dismiss on May 28, 2013. ECF No. 12. In response, Ms. Aylsworth filed the operative FAC on June 11, 2013, in accordance with Federal Rule of Civil Procedure 15(a)(1)(B). FAC, ECF No. 17. The court thus denied the motions to dismiss as moot. *See* 6/21/2013 Order.

The FAC contains claims for the following: (1) violation of California Business and Professions Code section 17200 (the "UCL") in loan origination by PMA, Wells Fargo, and Citibank; (2) unfair and deceptive business practices in loan servicing by Wells Fargo; (3) unfair and deceptive business practices in the foreclosure process by Wells Fargo and First American; (4) set aside pending trustee sale based on wrongful foreclosure proceedings in violation of California Civil Code section 2923.5 as to Wells Fargo and First American; (5) - (6) violations of the Homeowners Bill of Rights under California Civil code sections 2924.17 and 2923.6 by Well Fargo, Citibank, and First American; (7) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 by Wells Fargo and First American; (8) breach of the covenant of good faith and fair dealing by Wells Fargo; (9) reformation of a fraudulent contract and restitution as to PMA, Wells Fargo, and Citibank; (10) quiet title as to all Defendants and "all persons unknown" who claim an interest in the Property; and (11) declaratory relief as to all Defendants. *See generally* FAC, ECF No. 17.

1    On June 26, 2013, the court granted the parties' stipulated request to stay the litigation until

2    August 27, 2013 so that the parties could attempt to informally resolve the case. ECF No. 20. The

3    court granted the parties' stipulated extensions to the stay on September 4 and October 1, 2013. *See*

4    ECF No. 24, 26. The parties filed a case management conference statement on October 31, 2013

5    that indicated the matter had not settled and that Defendants intended to file motions to dismiss.

6    *See* ECF No. 33. Accordingly, the court lifted the stay on November 1, 2013. *See* Order, ECF No.

7    39.

8    First American and the Lenders have now moved to dismiss Ms. Aylsworth's First Amended

9    Complaint. *See* First American Motion, ECF No. 36; Lenders' Motion to Dismiss, ECF No. 40.

10    Ms. Aylsworth opposes both motions. *See* Opp'n to First American Motion, ECF No. 42; Opp'n to

11    Lenders' Motion, ECF No. 43. Defendants filed replies on November 22, 2013. *See* ECF Nos. 44-

12    45.

13                                         **ANALYSIS**

14    **I. MOTIONS TO DISMISS**

15        **A. Federal Rule of Civil Procedure 12(b)(6)**

16    A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not

17    contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v.*

18    *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

19    factual content that allows the court to draw the reasonable inference that the defendant is liable for

20    the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard

21    is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

22    defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint

23    attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

24    obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

25    conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual

26    allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.

27    at 555 (internal citations and parentheticals omitted).

28        In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to state-law claims grounded in fraud and requires a plaintiff to plead with particularity the circumstances constituting the fraud.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend.  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

## II. MS. AYLSWORTH'S SOLE FEDERAL CLAIM:  RESPA

Ms. Aylsworth's first claim alleges that Wells Fargo and First American violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17.  RESPA protects home buyers "from unnecessarily high settlement charges by certain abusive practices."  12 U.S.C. § 2601(a).  It provides plaintiffs with a private right of action for three types of wrongful acts: "(1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request ["QWR"] for information about a loan, 12 U.S.C. § 2605(f)."  *Choudhuri v. Wells Fargo Bank, N.A.,* No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing

*Patague v. Wells Fargo Bank, N.A.,* No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)). Ms. Aylsworth's sole federal claim, and thus the claim upon which this court's jurisdiction is based, alleges the third type. FAC, ECF No. 17, ¶¶ 95-109.

**A. The RESPA Claim as to Wells Fargo**

Ms. Aylsworth alleges that she sent Wells Fargo a QWR and a Validation of Debt and that it never responded. FAC ¶ 97. The Lenders argue that the FAC does not sufficiently allege that any correspondence Ms. Aylsworth sent constituted a QWR and fails to allege actual damages caused by the alleged violation.

A QWR is a "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). If a servicer of a federally-related mortgage loan receives a QWR from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, RESPA requires the servicer: (1) within 5 days (excluding legal public holidays, Saturdays, and Sundays), to provide the borrower with a written response acknowledging receipt of the correspondence (unless the action requested is taken within such period); and (2) within 30 days (excluding legal public holidays, Saturdays, and Sundays), and, if applicable, before taking any action with respect to the inquiry of the borrower, to:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the

1    borrower.

2    12 U.S.C. §§ 2605(e)(1)(A), (e)(2).[7]

3      The Lenders first argue that the FAC does not allege facts showing that Ms. Aylsworth's

4 correspondence constituted a QWR. Lenders' Motion at 17-18. "Plaintiff's alleged letter simply

5 makes a blanket statement that her account is in error, without providing a reason, and requests a

6 payment breakdown. This does not qualify as a QWR." *Id.* at 18. The court disagrees. According

7 to the FAC "[t]he QWR stated that Plaintiff believed there were violations of RESPA or TILA in the

8 processing of certain fees associated with Plaintiff's loan and loan documentation i.e., the servicing

9 of her loan, and requested among other things, a specific breakdown of the fees and an explanation

10 of why such charges were incurred." FAC ¶ 97. The FAC's references to "certain fees" and "such

11 charges" are sufficient to allege a QWR at the motion to dismiss stage. *See* 12 U.S.C.

12 § 2605(e)(1)(B).

13      Moreover, a QWR is valid if it explains why the borrower's "account is in error *or provides*

14 *sufficient detail to the servicer regarding other information sought by the borrower.*" 12 U.S.C.

15 § 2605(e)(1)(B)(ii) (emphasis added). Here, the FAC sufficiently alleges that the QWR identified

16 the information that Ms. Aylsworth sought from Wells Fargo. At this stage, that is enough.

17      In opposition, the Lenders cite cases in which court dismissed similar allegations at the pleading

18 stage. *See Phillips v. Bank of America Corp.*, No. C 10-0400 JF (HRL), 2010 WL 1460824, at *3

19 (N.D. Cal. Apr. 9, 2010); *Pettie v. Saxon Mortgage Servs.*, No. C08-5089RBL, 2009 WL 1325947,

20 at *2 (W.D. Wash. May 12, 2009); *Walker v. Equity 1 Lenders Grp.*, 09CV325 WQHAJB, 2009 WL

21 1364430, at *4-5 (S.D. Cal. May 14, 2009). These cases do not change the outcome. In *Phillips* and

22 *Pettie*, the plaintiffs pleaded themselves out of court by attaching their obviously-deficient purported

23 QWRs to the complaint. In *Walker*, the plaintiff alleged that the operative complaint itself was the

24 QWR. *See* 2009 WL 1364430, at *4-5. In contrast, Ms. Aylsworth's FAC alleges facts about the

25 content of her alleged QWR that permit the court to reasonably draw the conclusion that it met the

---

27        [7] The parties rely on an earlier version of 12 U.S.C. § 2605(e)(1)(A) that allows a servicer
more time to respond to a QWR. The court quotes the current statute, which became effective July
28 20, 2011 and applies here.

1  statutory definition. *Cf. Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)

2  (cited in Lenders' Reply, ECF No. 45 at 7).

3      The Lenders' second argument is that Ms. Aylsworth fails to allege actual damages caused by

4  the alleged violation. Lenders' Motion at 18. RESPA permits recovery of "any actual damages to

5  the borrower as a result of the failure" to respond to the QWR, as well as "any additional damages,

6  as the court may allow, in the case of a pattern or practice of noncompliance with the requirements

7  of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). In order to state a claim

8  for actual damages under RESPA, a plaintiff has the obligation to "point to some colorable

9  relationship between his injury and the actions or omissions that allegedly violated RESPA." *Allen*

10  *v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010);

11  *see Lawther v. Onewest Bank*, No. C 10-0054 RS, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30,

12  2010). The plaintiff must allege a "concrete harm caused by the RESPA violation itself, not harm

13  generally resulting from a plaintiff's default and foreclosure process." *Tamburri v. Suntrust*

14  *Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012) (collecting cases).

15      Ms. Aylsworth does not allege any connection between her alleged damages and Wells Fargo's

16  failure to respond to the QWR. Her damages allegations are that "[d]ue to [Wells Fargo's] failure to

17  provide a breakdown of such fees resulting in Plaintiff's inability to properly dispute such fees,

18  Plaintiff continues to be charged additional interest, penalties and fees for which she would not

19  otherwise be charged." FAC ¶ 103. She states that the $79,884.75 past due amount recorded in the

20  2011 NOD is incorrect and that since Defendants have not responded to the QWR she sent on

21  January 16, 2013, she has been "unable to verify this alleged amount due to Defendants." *Id.* ¶ 104.

22  Furthermore, she "has been damaged in the amount of ongoing penalties, fees, and interest charged

23  by Defendants, including but not limited to a charge of 5% of any payment of principal and interest

24  not received in full by the end of fifteen calendar days after the date it was due." *Id.* ¶ 105. Finally,

25  she alleges that Wells Fargo's failure to comply with the prohibition on reporting overdue payments

26  to a credit agency cause "significant injury" to Ms. Aylsworth's credit score and prevented her from

27  obtaining additional credit." *Id.* ¶ 106.

28      To the extent Ms. Aylsworth incurred these damages before Wells Fargo had any obligation to

respond to the QWR, the allegations do not support a RESPA claim. *See*, e.g., *Obot v. Wells Fargo Bank, N.A.*, No. C11-00566 HRL, 2011 WL 5243773, at *3 (N.D. Cal. Nov. 2, 2011) (where plaintiff sent QWR after she had already defaulted on her loan, she failed to allege facts plausibly showing damages for fees, interest, and penalties incurred because of default were caused by any RESPA violation).

Ms. Aylsworth's best argument is that her inability to dispute the amount of her alleged default and the resulting penalties, fees, and interest caused her to pay more money in the interim between the date that Wells Fargo should have responded to her QWR (approximately March 1, 2013)[8] and the date she filed suit (April 10, 2013). But she does not allege that she incurred any damages during that period. Nor can the court reasonably conclude that Ms. Aylsworth suffered damages during that period given that she filed for bankruptcy on February 27, 2013. FAC ¶ 93. Regardless, she provides no facts to support her contention that if Wells Fargo had responded to her QWR, its response would have enabled her to avoid any damages or adverse credit consequences. Such conclusory allegations fail to state a claim. *See Guidi v. Paul Fin., LLC*, No. 13-CV-01919-LHK, 2014 WL 60253 (N.D. Cal. Jan. 7, 2014) (dismissing as conclusory nearly identical RESPA allegations in complaint filed by Ms. Aylsworth's counsel). Accordingly, the court grants the Lenders' motion to dismiss Ms. Aylsworth's RESPA claim against Wells Fargo without prejudice.

**B. The RESPA Claim as to First American**

First American moves to dismiss Ms. Aylsworth's RESPA claim on the ground that it is not a "servicer" subject to RESPA and because Ms. Aylsworth does not allege she sent First American a QWR. First American Motion at 18-19. The court agrees.

RESPA provides that a "servicer" must respond to a borrower's QWR. *See* 12 U.S.C. § 2605(e)(2). A "servicer" is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)," and "'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C.

---

[8] This is 30 days after January 16, 2013, excluding Saturdays, Sundays, Martin Luther King Day (1/21/2013), and President Washington's birthday (2/18/2013).

§ 2605(i)(2) & (3).

First American argues that it is not a servicer within the definition of RESPA. First American Motion at 18-19. Ms. Aylsworth does not argue otherwise. *See* Opp'n to First American Motion, ECF No. 43. Accordingly, the court dismisses Ms. Aylsworth's RESPA claim against First American.

In her opposition, Ms. Aylsworth argues that the facts in her RESPA claim against First American regarding the Validation of Debt are sufficient to put First American on notice that she has a claim under the Fair Debt Collection Practices Act ("FDCPA") so that the court should require First American to answer the FAC. *See* First American Opp'n at 17; First American Reply at 6-7. The court disagrees. Just because First American is on notice that Ms. Aylsworth intends to bring a claim, that does not mean she has sufficiently pleaded that claim. For example, to be held liable for violation of the FDCPA, a defendant must fall within the FDCPA's definition of "debt collector." *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *see also Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998). The FAC contains no allegations showing that First American falls within that definition. Accordingly, if Ms. Aylsworth seeks to bring an FDCPA claim against First American, she should do it in an amended complaint.

## III. SUPPLEMENTAL JURISDICTION

Having dismissed Ms. Aylsworth's sole federal claim, the court must decide whether to retain jurisdiction over her state law claims. In any civil action of which the district court has original jurisdiction, the district court shall have supplemental jurisdiction over related state law claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim" if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court may also decline to exercise supplemental jurisdiction if the retention of the state claims "requires the expenditure of substantial additional judicial time and effort." *Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1548 (9th Cir. 1994); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *see also Government Employees Ins. Co. v. Dizol* 133 F.3d 1220, 1224 (9th Cir. 1998).

Here, Ms. Aylsworth's state law claims form the body of this action. They involve a number of disputes arising out of the parties' loan modification discussions, the foreclosure process, and compliance with California statutes pertaining to both. Accordingly, having dismissed all claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims. These remaining state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

The court **GRANTS** Defendants' motions to dismiss. Ms. Aylsworth may file a Second Amended Complaint within 21 days of this order. If no amended complaint is filed, the Clerk shall close the file.

This disposes of ECF Nos. 36 & 40.

**IT IS SO ORDERED.**

Dated: January 17, 2014

_____
LAUREL BEELER
United States Magistrate Judge